IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CODY BRANDON LEE                                                                                         PLAINTIFF

v.                                        CASE NO.        13-2021

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

The plaintiff filed an applications for SSI on October 20, 2009 and DIB on May 5, 2010 , alleging an onset date of June 19, 2009, due to plaintiff's brain injury and broken leg. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on January 19, 2011. Plaintiff was present and represented by counsel.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 31 years of age and possessed an 11th grade education. The Plaintiff had past relevant work ("PRW") experience as a cook, construction worker, and pizza delivery person. (T. 156).

On March 31, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's cognitive disorder, traumatic brain injury, broken leg, and hypertension did not meet or equal any Appendix 1 listing. T. 17. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional limitations. T. 18. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as small products assembler, and small products inspector. T. 23.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is not supported by substantial evidence.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained

work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

    The ALJ found that the Plaintiff had the Residual Functional Capacity to:

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he cannot climb ladders, ropes, and scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must avoid hazards, including moving machinery and unprotected heights. **The claimant can do work where interpersonal contact is incidental to the work performed, the**

>  **complexity of tasks is learned and performed by rote with few variables and little judgment involved, and supervision is simple, direct, and concrete.**
> (T. 18)

### A. Credibility:

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

The Plaintiff was a passenger in a vehicle on June 19, 2009 when, as a result of a collision, he was ejected through the window and suffered extensive injuries. His injuries are documented in doctor and medical records from Saint Edward Mercy Medical Center (SEMMC) and there is no question of the Traumatic Brain Injury (TBI) incurred by the Plaintiff. (T. 272-283). Upon discharge from the SEMMC his final diagnosis was Traumatic brain injury with intracranial hemorrhage and diffuse axonal injury, fracture of the cervical and thoracic vertebrae, closed fracture of the right femur, fracture of the right first rib with small pneumothorax and pulmonary contusion, respiratory failure (resolved), and gross hematura with right renal

contusion/laceration. (T. 284).

The Plaintiff did not complete a Function Report but one was completed by his mother in October 2009 who stated that the Plaintiff has lived with her since his accident. (T. 163). She acknowledged that the Plaintiff had some difficulty in his personal care because he "needed a reminder" to use a stopper in the bathtub, to use soap, and to turn the water off. (T. 165). She also stated that he would leave items cooking on the stove and put metal items in the microwave. (T. 166). He needed verbal instruction to do simple tasks and take his medication (T. 166-167) and cannot remember where he is going when walking and cannot drive (T. 167). Because of his memory impairment he cannot shop, pay bills or handle money (T. 168) and does not read or use the computer like he use to.

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

**1.  Prior Work Record**

According to the record the Plaintiff had a consistent but low paying work history.

(T.137). The Plaintiff testified that he had always been active and "pretty much always worked". (T. 45). His mother testified that her son was not lazy and that he had consistently worked even though the "jobs were low paying, he worked long hours." She further stated that now he "can't remember hour to hour, day to day any sort of routine." (T. 56). There is nothing in the Plaintiff's work history that would cast doubt on his credibility.

### 2. Observations by Treating Physicians

Dr. Jeffrey Evans performed a Right femur intramedullary nailing on the Plaintiff on July 15, 2009 (T. 291) which was performed without complications (T-292). The Plaintiff, however, continued to have difficulty with walking and Dr. Oberlander noted in April 2010 that his examination "Revealed a broad base gait with slight limp. He could not tandem walk, but could toe and heel walk with difficulty. Romberg performed and showed him swaying and falling backwards." (T. 671).

Subsequent to his discharge the Plaintiff had a followup visit with one of his treating physician's, Dr. Joseph Queeney in September 2009, who noted that he had reviewed the recent CT scan which showed "a chronic subdural on the left side and what appear to be hydroma on the right side." He also noted that the Plaintiff "does have some atrophy which is a little bit more than what I would expect from someone that is 28 years of age." (T. 603). In October 2009 Dr. Queeney had to perform a "Bur hole with evacuation of subdural hematoma and placement of subdural drains" and he noted that the Plaintiff "did have a significant amount of old dark colored subdural blood in both subdural spaces." (T. 592). Dr. Queeney saw the Plaintiff in November and his mother reported that he was "doing very well, a lot better with his thinking and with his walking." Dr. Queeney noted that his wounds were "healing nicely" and that he

would see him back in two months. (T. 652).

None of the Plaintiff's treating physicians offered any opinion on the Plaintiff's ability to perform work related activity.

## B. Residual Functional Assessment

The only RFC Assessments are from a non-examining consultive physicians. Dr. Winston Brown assessed the Plaintiff's mental limitations as only Mild to Moderate (T. 687) and felt the Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of task is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." (T. 693). With the exception of "e.g. assembly work" this language was adopted verbatim by the ALJ. (T. 19). Dr. Ronald Crow performed a Physical RFC Assessment on May 3, 2010 and found the Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently, and that he could stand for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. (T. 696).  He felt the Plaintiff could never climb ladders, ropes or scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. (T. 697). Dr. Crow noted that there was "no MS in file to evaluation memory loss." (T. 703).

The court has stated many times that the results of a one-time medical evaluation may not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).  "When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir.2000). "As a general matter, the

report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole. Id.

In this case there is no opinion from the Plaintiff's treating physicians, one an orthopedic surgeon and the other a neurosurgeon. These are both experts and their opinions would weigh heavily concerning the work the Plaintiff could perform. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). That duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *Smith v. Barnhart* 435 F.3d 926, 930 (C.A.8 (Ark.),2006).

If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010). This requirement is crucial in this instance where the Plaintiff's mental capabilities are the specific issue.

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). The court, in this instance, believes that remand is necessary to allow the ALJ to seek clarification from the Plaintiff's treating physicians on his ability to perform work related activity.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this December 31, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE